MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X

| | |
|---|---|
| AGUSTIN SAUL VALERIANO VILLAREAL, PRIXCO SORIANO REYES, SANTOS LUIS TOC BAQUIAX, AND VICENTE PARRA, *individually and on behalf of others similarly situated,* | **COMPLAINT**<br><br>**COLLECTIVE ACTION UNDER 29 U.S.C. § 216(b)** |

*Plaintiffs*,

-against-

SJG FOODS LLC (d/b/a BENARES) (f/k/a
BALUCHI'S), RAKESH AGGARWAL,
INDER SINGH, GURVINDER SAHNI,
RANJIT SINGH, YOGEETA SAHNI, and
SUKHDEV SINGH,

*Defendants.*
--------------------------------------------------------X

     Plaintiffs Agustin Saul Valeriano Villareal, Prixco Soriano Reyes, Santos Luis Toc Baquiax, and Vicente Parra, individually and on behalf of others similarly situated (collectively "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against SJG Foods LLC (d/b/a Benares) (f/k/a Baluchi's) ("Defendant Corporation"), Rakesh Aggarwal, Inder Singh, Gurvinder Sahni, Ranjit Singh, Yogeeta Sahni, and Sukhdev Singh (collectively, "Defendants") allege as follows:

<u>**NATURE OF THE ACTION**</u>

1.    Plaintiffs are former employees of Defendants SJG Foods LLC (d/b/a Benares)

(f/k/a Baluchi's), Rakesh Aggarwal, Inder Singh, Gurvinder Sahni, Ranjit Singh, Yogeeta Sahni, and Sukhdev Singh.

2.    Defendants own, operate, and/or control an Indian restaurant located at 240 W. 56th Street, New York, New York 10019 under the name Benares.

3.    Upon information and belief, individual Defendants Rakesh Aggarwal, Inder Singh, Gurvinder Sahni, Ranjit Singh, Yogeeta Sahni, and Sukhdev Singh serve or served as owners, managers, principals or agents of Defendant SJG Foods LLC (d/b/a Benares) (f/k/a Baluchi's) ("Defendant Corporation"), and through this corporate entity, operate or operated the restaurant as a joint or unified enterprise.

4.    Plaintiffs are former employees of Defendants. They were ostensibly employed as delivery workers, but they were required to spend a considerable part of their workday performing non-tipped, non-delivery work, including various restaurant duties such as making sauces and putting them into containers, cutting vegetables, preparing food, organizing deliveries, organizing merchandise, refilling containers, making dressings, purchasing items needed for the restaurant, fixing broken items, tying boxes, deconstructing boxes, cleaning the windows and the bathroom, conducting inventory, transporting wines, beers and other refreshments to the basement, and throwing out the garbage (hereinafter "non-tip non-delivery duties").

5.    At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage or overtime compensation for the hours that they worked.

6.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

7.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they worked over 10 hours per day.

8.      Defendants employed and accounted for Plaintiffs as delivery workers in their payroll, but in actuality Plaintiffs' duties required a significant amount of time spent in non-tip, non-delivery duties.

9.      Regardless, Defendants paid Plaintiffs at a rate that was lower than the required tip-credit rate.

10.     In addition, under state law, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped non-delivery duties exceeded 20% of each workday.   12 N.Y.C.R.R. § 146-2.9.

11.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay Plaintiffs a lower tip-credited rate, and they still failed to pay it.

12.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

- 3 -

13.    Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

14.    Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y.C.R.R. Tit. 12 § 146-1.6 (herein the "Spread of Hours Wage Order") including applicable liquidated damages, interest, attorneys' fees and costs.

15.    Plaintiffs seek certification of this action as a collective action on behalf of themselves individually and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq*. ("FLSA"), and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

17.    Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate(d) a restaurant located in this district. Further, Plaintiffs were employed by Defendants in this district.

## THE PARTIES

*Plaintiffs*

18.     Plaintiff Agustin Saul Valeriano Villareal ("Plaintiff Valeriano" or "Mr. Valeriano") is an adult individual residing in Bronx County, New York. Plaintiff Valeriano was employed by Defendants from approximately October 2016 until on or about March 26, 2017.

19.     Plaintiff Prixco Soriano Reyes ("Plaintiff Soriano" or "Mr. Soriano") is an adult individual residing in Queens County, New York. Plaintiff Soriano was employed by Defendants from approximately January 2017 until on or about March 2017.

20.     Plaintiff Santos Luis Toc Baquiax ("Plaintiff Toc" or "Mr. Toc") is an adult individual residing in Kings County, New York. Plaintiff Toc was employed by Defendants from approximately November 2016 until on or about May 30, 2017.

21.     Plaintiff Vicente Parra ("Plaintiff Parra" or "Mr. Parra") is an adult individual residing in Bronx County, New York. Plaintiff Parra was employed by Defendants from approximately August 2014 until on or about May 2015, from approximately October 2015 until on or about May 2016, and from approximately July 2016 until on or about November 2016.

*Defendants*

22.     At all relevant times, Defendants own, operate, and/or control an Indian restaurant located at 240 West 56th Street, New York, New York 10019 under the name "Benares."

23.     Upon information and belief SJG Foods LLC (d/b/a Benares) (f/k/a Baluchi's), is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 240 West 56th Street, New York, New York 10019.

24.     Defendant Rakesh Aggarwal is an individual engaging in business in this judicial district during the relevant time period.  Defendant Rakesh Aggarwal is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporation. He possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controlled significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendant, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

25.     Defendant Inder Singh is an individual engaging in business in this judicial district during the relevant time period. Defendant Inder Singh is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporation. He possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controlled significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

26.     Defendant Gurvinder Sahni is an individual engaging in business in this judicial district during the relevant time period. Defendant Gurvinder Sahni is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporation. He possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controlled significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendant, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

27.     Defendant Ranjit Singh is an individual engaging in business in this judicial district during the relevant time period. Defendant Ranjit Singh is sued individually in his

capacity as an owner, officer and/or agent of Defendant Corporation. He possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controlled significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

28.    Defendant Yogeeta Sahni is an individual engaging in business in this judicial district during the relevant time period. Defendant Yogeeta Sahni is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporation. He possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controlled significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

29.    Defendant Sukhdev Singh is an individual engaging in business in this judicial district during the relevant time period.  Defendant Sukhdev Singh is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporation.  He possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controlled significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

30.     Defendants own, operate and/or control an Indian restaurant located in the Midtown West section of New York City located at 240 West 56th Street, New York, New York 10019 (d/b/a Benares) (f/k/a Baluchi's).

31.     Individual Defendants Rakesh Aggarwal, Inder Singh, Gurvinder Sahni, Ranjit Singh, Yogeeta Sahni, and Sukhdev Singh possess or possessed operational control over Defendant Corporation, possess or possessed ownership interests in the Defendant Corporation, and control or controlled significant functions of in the Defendant Corporation.

32.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

33.     Each Defendant possesses or possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

34.     Defendants jointly employed Plaintiffs, and all similarly situated individuals, and are Plaintiffs' (and all similarly situated individuals') employers within the meaning of 29 U.S.C. § 201 *et seq*. and the NYLL.

35.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

36.     Upon information and belief, individual Defendants Rakesh Aggarwal, Inder Singh, Gurvinder Sahni, Ranjit Singh, Yogeeta Sahni, and Sukhdev Singh operate Defendant

- 8 -

Corporation as either an alter ego of themselves and/or fail to operate Defendant Corporation as a legal entity separate and apart from themselves by, among other things:

    (a)    failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a separate and legally distinct entity;

    (b)    defectively forming or maintaining Defendant Corporation by, among other things, failing to hold annual meetings or maintaining appropriate corporate records;

    (c)    transferring assets and debts freely as between all Defendants;

    (d)    operating Defendant Corporation for their own benefit as the sole or majority shareholders;

    (e)    operating Defendant Corporation for their own benefit and maintaining control over it as a closed corporation or closely controlled entity;

    (f)    intermingling assets and debts of their own with Defendant Corporation;

    (g)    diminishing and/or transferring assets of Defendant Corporation to protect their own interests; and

    (h)    other actions evincing a failure to adhere to the corporate form.

37.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

38.    In each year from 2014 to 2017, Defendants, both separately and jointly, have had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

39.    In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce.  As an example, numerous items that were used in the restaurant on a daily basis were goods produced outside of the State of New York.

*Individual Plaintiffs*

40.    Plaintiffs are former employees of Defendants ostensibly employed as delivery workers. However, Plaintiffs were also required to perform the non-tipped non-delivery duties described above.

41.    They seek to represent a class of similarly situated individuals under 29 U.S.C. § 216(b).

*Plaintiff Agustin Saul Valeriano Villareal*

42.    Plaintiff Valeriano was employed by Defendants from approximately October 2016 until on or about March 26, 2017.

43.    Defendants ostensibly employed Plaintiff Valeriano as a delivery worker. However, Plaintiff Valeriano also was required to perform the non-delivery non-tip duties described above.

44.    Although Plaintiff Valeriano ostensibly was employed as a delivery worker, he spent over 20% of every work day performing non-delivery work.

45.    Plaintiff Valeriano regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

46.    Plaintiff Valeriano's work duties required neither discretion nor independent judgment.

47.    Plaintiff Valeriano regularly worked in excess of 40 hours a week.

48.     From approximately October 2016 until on or about March 26, 2017, Plaintiff Valeriano worked from approximately 11:00 a.m. until on or about 3:00 p.m. and then from approximately 5:00 p.m. until on or about 10:00 p.m. or 11:00 p.m. Mondays, Tuesdays, Wednesdays, and Fridays and from approximately 11:00 a.m. until on or about 10:00 p.m. or 11:00 p.m. Saturdays and Sundays (typically 61 hours per week).

49.     Plaintiff Valeriano was paid his wages in cash.

50.     From approximately October 2016 until on or about March 26, 2017, Defendants paid Plaintiff Valeriano a fixed salary of $25.00 per shift (or $50.00 for a double shift).

51.     Plaintiff Valeriano's salary did not vary even when he was required to stay late or work a longer day than his usual schedule.

52.     In fact, Defendants regularly required Plaintiff Valeriano to work at least 30 minutes past his scheduled stop time and did not compensate him for the additional time they required him to work.

53.     Plaintiff Valeriano was never notified by Defendants that his tips would be included as an offset for wages.

54.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Valeriano's wages.

55.     Plaintiff Valeriano was not granted a meal break or rest period when he worked on the weekends.

56.     Plaintiff Valeriano was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

57.      Further, Defendants did not provide Plaintiff Valeriano with any document or

other statement accurately accounting for all of his actual hours worked or setting forth the rate of pay for all of his hours worked.

58.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Valeriano regarding wages under the FLSA and NYLL.

59.     Defendants did not give any notice to Plaintiff Valeriano in English and in Spanish (Plaintiff Valeriano's primary language) of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

60.     Defendants required Plaintiff Valeriano to purchase "tools of the trade" with his own funds—including two bicycles, a helmet, one set of lights, a padlock, a chain, one bell, and a jacket.

*Plaintiff Prixco Soriano Reyes*

61.     Plaintiff Soriano was employed by Defendants from approximately January 2017 until on or about March 2017.

62.     Defendants ostensibly employed Plaintiff Soriano as a delivery worker. However, Plaintiff Soriano also was required to perform the non-delivery non-tipped duties described above.

63.     Although Plaintiff Soriano ostensibly was employed as a delivery worker, he spent over 20% of his work time each day performing non-delivery work throughout his employment with Defendants.

64.     Plaintiff Soriano regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

65.     Plaintiff Soriano's work duties required neither discretion nor independent judgment.

- 12 -

66.    Plaintiff Soriano regularly worked in excess of 40 hours a week.

67.    From approximately January 2017 until on or about March 2017, Plaintiff Soriano worked from approximately 11:00 a.m. until on or about 3:00 p.m. and then from approximately 5:00 p.m. until on or about 11:00 p.m. or 11:30 p.m. three days per week, from approximately 11:00 a.m. until on or about 3:00 p.m. one day per week, and from approximately 11:00 a.m. until on or about 11:00 p.m. or 11:30 p.m. on Saturdays and Sundays (typically 59.25 hours per week).

68.    Throughout his employment with Defendants, Plaintiff Soriano was paid his wages in cash.

69.    From approximately January 2017 until on or about March 2017, Plaintiff Soriano was paid a fixed salary of $25.00 per shift (or $50.00 for a double shift).

70.    Plaintiff Soriano's salary did not vary even when he was required to stay late or work a longer day than his usual schedule.

71.    In fact, Defendants regularly required Plaintiff Soriano to work at least one hour past his scheduled stop time and did not pay him for the additional time they required him to work.

72.    Plaintiff Soriano was never notified by Defendants that his tips were being included as an offset for wages.

73.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Soriano's wages.

74.    Plaintiff Soriano was not granted a meal break or rest period when he worked on the weekends.

75.    Further, Defendants did not provide Plaintiff Soriano with any document or other

statement accurately accounting for all of his actual hours worked or setting forth the rate of pay for all of his hours worked.

76.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Soriano regarding wages under the FLSA and NYLL.

77.    Defendants did not give any notice to Plaintiff Soriano, in English and in Spanish (Plaintiff Soriano's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

78.    Defendants required Plaintiff Soriano to purchase "tools of the trade" with his own funds—including two bicycles, one helmet, a vest, bike maintenance, a chain and lock, and brakes.

*Plaintiff Santos Luis Toc Baquiax*

79.    Plaintiff Toc was employed by Defendants from approximately November 2016 until on or about May 30, 2017.

80.    Defendants ostensibly employed Plaintiff Toc as a delivery worker. However, Plaintiff Toc also was required to perform the non-delivery non-tip duties described above.

81.    Although Plaintiff Toc ostensibly was employed as a delivery worker, he spent over 20% of his work hours each day performing non-delivery work.

82.    Plaintiff Toc regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

83.    Plaintiff Toc's work duties required neither discretion nor independent judgment.

84.    From approximately November 2016 until on or about May 30, 2017, Plaintiff Toc worked from approximately 5:00 p.m. until on or about 11:00 p.m. or 11:30 p.m. Mondays, Tuesdays, Wednesdays and Thursdays, and from approximately 10:30 a.m. until on or about

- 14 -

3:00 p.m., and then from approximately 5:00 p.m. until on or about 11:00 p.m. or 11:30 p.m. on Fridays (typically 36 hours per week).

85.    Throughout his employment with Defendants, Plaintiff Toc was paid his wages by check.

86.    Throughout his entire employment with Defendants, Plaintiff Toc was paid a fixed salary of $225 per week.

87.    Plaintiff Toc's salary did not vary even when he was required to stay late or work a longer day than his usual schedule.

88.    In fact, Defendants regularly required Plaintiff Toc to work at least one hour past his scheduled stop time and did not pay him for the additional time they required him to work.

89.    Plaintiff Toc was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

90.    Plaintiff Toc never was notified by Defendants that his tips would be included as an offset for wages.

91.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Toc's wages.

92.    Further, Defendants did not provide Plaintiff Toc with any document or other statement accurately accounting for all of his actual hours worked or setting forth the rate of pay for all of his hours worked.

93.    In fact, Plaintiff Toc was required to sign a document, the contents of which he was not given a chance to review, in order to receive his weekly pay.

- 15 -

94.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Toc regarding wages under the FLSA and NYLL.

95.    Defendants did not give any notice to Plaintiff Toc, in English and in Spanish (Plaintiff Toc's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

96.    Defendants required Plaintiff Toc to purchase "tools of the trade" with his own funds—including two helmets, two bikes, a lock and chain, two sets of lights for the bikes, and a vest.

*Plaintiff Vicente Parra*

97.    Plaintiff Parra was employed by Defendants from approximately August 2014 until on or about May 2015, from approximately October 2015 until on or about May 2016, and then from approximately July 2016 until on or about November 2016.

98.    Defendants ostensibly employed Plaintiff Parra as a delivery worker. However, Plaintiff Parra also was required to perform the non-delivery non-tip duties described above.

99.    Although Plaintiff Parra ostensibly was employed as a delivery worker, he spent over 20% of his work hours each day performing non-delivery work.

100.    Plaintiff Parra regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

101.    Plaintiff Parra's work duties required neither discretion nor independent judgment.

102.    Plaintiff Parra regularly worked in excess of 40 hours a week.

103.    From approximately August 2014 until on or about May 2015 and from approximately October 2015 until on or about May 2016, Plaintiff Parra worked from

approximately 10:00 a.m. until on or about 3:00 p.m., and then from approximately 5:00 p.m. until on or about 10:00 p.m. or 10:30 pm  three days a week, from approximately 11:00 a.m. until on or about 3:00 p.m. and then from approximately 5:00 p.m. until on or about 10:00 p.m. or 10:30 pm one day a week, and from approximately 11:00 a.m. until on or about 10:00 p.m. or 10:30 pm  another two days a week (typically 62.5 hours per week).

104.    From approximately July 2016 until on or about November 2016, Plaintiff Parra worked from approximately 10:00 a.m. until on or about 3:00 p.m., and then from approximately 5:00 p.m. until on or about 10:00 p.m. or 10:30 pm three days a week, from approximately 11:00 a.m. until on or about 3:00 p.m. and then from approximately 5:00 p.m. until or about 11:00 p.m. one day a week, and from approximately 11:00 a.m. until on or about 11:00 p.m. another two days a week (typically 65 hours per week).

105.    Throughout his employment with Defendants, Plaintiff Parra was paid his wages in cash.

106.    Throughout his entire employment with Defendants, Plaintiff Parra was paid a fixed salary of $25 per shift (or $50 per shift).

107.    Plaintiff Parra's salary did not vary even when he was required to stay late or work a longer day than his usual schedule.

108.    In fact, Defendants regularly required Plaintiff Parra to start working one hour prior to his scheduled start time and to continue working at least 30 minutes past his scheduled stop time, and did not compensate him for the additional time they required him to work.

109.    Plaintiff Parra was not granted a meal break or rest period when he worked on the weekends.

110.    Plaintiff Parra never was notified by Defendants that his tips would be included as an offset for wages.

111.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Parra's wages.

112.    For a considerable portion of his employment with defendants, Plaintiff Parra was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

113.     Further, Defendants did not provide Plaintiff Parra with any document or other statement accurately accounting for all of his actual hours worked or setting forth the rate of pay for all of his hours worked.

114.    On approximately three occasions, Plaintiff Parra was required to sign a document, the contents of which he was not given a chance to review, in order to receive his weekly pay.

115.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Parra regarding wages under the FLSA and NYLL.

116.    Defendants did not give any notice to Plaintiff Parra, in English and in Spanish (Plaintiff Parra's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

117.    Defendants required Plaintiff Parra to purchase "tools of the trade" with his own funds—including one bike, a helmet, two sets of lights, a lock and chain, and a vest.

*Defendants' General Employment Practices*

118.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40

hours a week without paying them appropriate minimum wage, overtime and spread of hours pay as required by federal and state laws.

119.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

120.    Defendants failed to inform Plaintiffs that their tips would be credited towards the payment of the minimum wage.

121.    Defendants habitually required Plaintiffs to work additional time beyond their regular shifts but did not provide them with any additional compensation.

122.    Defendants failed to maintain a record of tips earned by Plaintiffs for the deliveries they made to customers.

123.    Defendants required all delivery workers, including Plaintiffs, to perform general non-tipped non-delivery restaurant tasks in addition to their primary duties as delivery workers.

124.    Plaintiffs, and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing non-tipped non-delivery duties.

125.    Plaintiffs and all other delivery workers were not even paid at the required lower tip-credit rate by Defendants. However, under state law, Defendants were not entitled to a tip credit because the delivery workers' and Plaintiffs' non-tipped duties exceeded 20% of each workday (12 N.Y.C.R.R. § 146).

126.    New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he is assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§ 137-3.3 and 137-3.4).

127.    Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

128.    The delivery workers', including Plaintiffs', duties were not incidental to their occupation as delivery workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

129.    In violation of federal and state law as codified above, Defendants classified Plaintiffs and other delivery workers as tipped employees, but did not pay them at the tip-credited rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

130.    Defendants' pay practices resulted in Defendants' delivery workers, including Plaintiffs, never being paid for all their hours worked, which resulted in their effective rate of pay falling below the required minimum and overtime wage rate.

131.    Most of the Plaintiffs were paid their wages entirely in cash.

132.    Defendants willfully disregarded and purposefully evaded record keeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

133.    Upon information and belief, this was done to disguise the actual number of hours Plaintiffs, and similarly situated employees, worked and to avoid paying them properly for their (1) full hours worked, (2) minimum wage, (3) overtime wages, and (4) spread of hours pay.

134.    Defendants failed to post required wage and hour posters in the restaurant, and did not provide their employees, including Plaintiffs, with statutorily required wage and hour records or statements of their pay received, in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of their employees', including Plaintiffs', relative lack of

sophistication in wage and hour laws. Defendants failed to provide Plaintiffs and other employees with accurate wage statements at the time of payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked, as required by NYLL § 195(3).

135.    Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" name used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

136.    Plaintiffs bring their FLSA minimum wage, overtime and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons who are or were employed by Defendants on or after the date that is three years before the filing of this Complaint (the "FLSA Class Period"), as employees of Defendants (the "FLSA Class").

137.    At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or have been similarly situated, have had substantially similar job requirements and pay provisions.

138.    At all relevant times, Plaintiffs, and other members of the FLSA class who are and/or were similarly situated in that they had substantially similar job requirements and pay provisions, were subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime and one and one half times the regular rate and willfully failing to keep records required by the FLSA.

139.    At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or were similarly situated, were subject to Defendants' willful failure to keep records required by the FLSA.

140.    The claims of Plaintiffs stated herein are similar to those of the other employees.

**FIRST CAUSE OF ACTION**
**(VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA)**

141.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

142.    At all times relevant to this action, Defendants were Plaintiffs' employers (and employers of the putative FLSA class members) within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for their employment.

143.    At all times relevant to this action, Defendants were engaged in commerce or in

an industry or activity affecting commerce.

144.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

145.    Defendants failed to pay Plaintiffs and the FLSA class members at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

146.    Defendants' failure to pay Plaintiffs and the FLSA class members at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

147.     Plaintiffs and the FLSA class members were damaged in an amount to be determined at trial.

### SECOND CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA)

148.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

149.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

150.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

151.    Plaintiffs were damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### (VIOLATION OF THE NEW YORK MINIMUM WAGE ACT)

152.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

153.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire

Plaintiffs, controlled their terms and conditions of employment, and determined the rates and methods of any compensation in exchange for their employment.

154.    Defendants, in violation of the NYLL, paid Plaintiffs less than the minimum wage in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor.

155.    Defendants' failure to pay Plaintiffs minimum wage was willful within the meaning of NYLL § 663.

156.    Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE NEW YORK LABOR LAW)

157.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

158.    Defendants, in violation of the NYLL Art. 19 and 12 N.Y.C.R.R. § 146-1.4, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

159.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of NYLL § 663.

160.    Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (VIOLATION OF THE SPREAD OF HOURS WAGE ORDER OF THE NEW YORK COMMISSIONER OF LABOR)

161.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

162.    Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs spread of hours exceeded ten hours in violation of NYLL § 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

163.    Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

164.    Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### (VIOLATION OF THE NOTICE AND RECORDKEEPING REQUIREMENTS OF THE NEW YORK LABOR LAW)

165.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

166.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), of the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer,  as required by NYLL § 195(1).

167.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION
### (VIOLATION OF THE WAGE STATEMENT PROVISIONS OF THE NEW YORK LABOR LAW)

168.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

169.    With each payment of wages, Defendants failed to provide Plaintiffs with a statement listing each the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;

gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked,, as required by NYLL § 195(3).

170.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION
### (RECOVERY OF EQUIPMENT COSTS)

171.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

172.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their job, such as bicycles, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

173.    Plaintiffs were damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment against Defendants:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

(c)      Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

(d)      Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' (and the prospective collective class members') compensation, hours, wages, and any deductions or credits taken against wages;

(e)      Declaring that Defendants' violation of the provisions of the FLSA were willful as to Plaintiffs (including the prospective collective class members);

(f)      Awarding Plaintiffs (including the prospective collective class members) damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)      Awarding Plaintiffs (including the prospective collective class members) liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)      Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)      Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)      Declaring that Defendants violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiffs;

(k)      Declaring that Defendants violated the notice and recordkeeping requirements of

the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(l)        Declaring that Defendants' violations of the New York Labor Law and Spread of Hours Wage Order were willful as to Plaintiffs;

(m)       Awarding Plaintiffs damages for the amount of unpaid minimum and overtime wages, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL, as applicable;

(n)        Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)        Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, spread of hours pay, and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)        Awarding Plaintiffs (including the prospective collective class members) pre-judgment and post-judgment interest as applicable;

(q)         Awarding Plaintiffs (including the prospective collective class members) the expenses incurred in this action, including costs and attorneys' fees;

(r)        Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)        All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.


Dated:  New York, New York
        October 27, 2017

                            MICHAEL FAILLACE & ASSOCIATES, P.C.

                            _____/s/ Michael Faillace_____

                            By:    Michael A. Faillace [MF-8436]
                                   60 East 42nd Street, Suite 4510
                                   New York, New York 10165
                                   (212) 317-1200
                                   *Attorneys for Plaintiffs*

- 29 -

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

March 30, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Agustin Saul Valeriano Villarreal

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    30 de marzo de 2017

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

March 30, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                Prixco Soriano Reyes

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    30 de marzo de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

April 28, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Santos Luis Toc Baquiax

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     28 de abril de 2017

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42ⁿᵈ Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

March 30, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                        Vicente Parra

Legal Representative / Abogado:        Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                         30 de marzo de 2017